All right. Case number two, PO 21-1942, Illinois Insurance Guaranty Fund v. Xavier Becerra. And Ms. Young. Hello, Ms. Young. Good morning. You may begin whenever you're ready. Thank you, Your Honor. May it please the Court, I represent the Illinois Insurance Guaranty Fund, a statutory payer of last resort when an insurance company is declared insolvent. I will address the two issues pending before the Court, standing and jurisdiction, and I will start with standing. With respect to standing, the issue is whether the fund sufficiently alleged an injury in fact. The case law from this circuit and from the United States Supreme Court tells us that this showing is not meant to be a difficult one, particularly here at the pleading stage. The fund needs to show an injury that's particular to it, that's actual or imminent, something concrete that affects the fund in a personal way. We need to show a personal stake in the controversy, and the Supreme Court has told us that an identifiable trifle is sufficient. The fund satisfies that burden in at least two ways. First, through administrative burden. This case involves the Medicare Secondary Payer Act, or the MSP, and specifically whether the fund falls within the statutory definition of an applicable plan such that the fund has to submit periodic reports to the government under Section 111 of the MSP. I'm sorry to interrupt you, but if the fund didn't believe it was subject to the reporting requirement, why did it ever begin reporting? What caused the fund to believe it was subject to this requirement in the first place? Well, the fund has been reporting, and we've been reporting for some time. There was a Ninth Circuit case that came out involving an analog to the Illinois Insurance Guarantee Fund, the California fund. In that case, the court determined that the California fund didn't fall within the definition of a primary plan, which is defined similarly to an applicable plan. And in that case, the Ninth Circuit determined that the California fund did not have to submit conditional payment reimbursements. After that, the California fund wrote to the government and asked the government if it could also cease the Section 111 reporting. And the government said yes, based on the Ninth Circuit decision. Very shortly after that decision came out, the Illinois fund similarly wrote to the government, and we asked for a similar determination based on the same reasoning and results of the Ninth Circuit that we may also cease Section 111 reporting. The government, however, responded negatively and told us that notwithstanding that Ninth Circuit decision, the government believed that the fund was an applicable plan that must continue reporting. And that's what prompted this lawsuit. And our fund... You know, it appears that the fund does have a pending challenge to specific repayment determinations in the administrative process. Did the fund dispute the reporting requirements in that pending challenge to a specific repayment determination? We did not, nor could we. So for purposes of jurisdiction here, our primary argument is that there is no administrative process available to us, which is why we came to this court. When the process does apply, it applies to those conditional payment demands. The administrative process, it applies to situations where you have a specific demand, and there's been a determination that the plan is responsible for payment. By statute... In those appeals, are you arguing that you are not an applicable plan? We are arguing that we're not a primary plan. Are you... Sorry, maybe I'm getting the two branches mixed up because they're so similar. You're arguing you're not a primary plan in those payment appeals? We are. And if you prevail on that, or if you lose on that, why would that not also govern the reporting requirements? So the administrative process concerns only, and by statute it concerns only, whether we have to reimburse conditional payment demands. That's what the statute says. That's the authority that that administrative tribunal has. With respect to whether if we win in that case, we should also win this case, we would of course argue that yes, the definitions of applicable plan and primary plan are substantively very similar, such that if we were to win through the administrative process, that may impact the result here. So would I be correct if... I'm hearing you. Would I be correct that a determination that the fund is not a primary or applicable plan would relieve the fund of not only the reporting requirement, but also the much more onerous obligation to reimburse Medicare for certain services? Is that the real issue here? It's certainly the fund's position, but it's not something that the government has conceded. And in fact, the issues have been treated separately, where you have a separate administrative process for a primary plan, whether a primary plan has to pay for conditional payments, and there's a separate statutory definition and a separate process for the Section 111 reporting. But do you have the ability, once you get a determination on the reimbursement side that you're not a primary plan, which is the determination that you want, can you then take that and go back to HHS, you've got this failed letter, this letter that didn't give you an opinion at all, and say, look, now we've got a determination on the reimbursement side, we're not a primary plan, can you reconsider the decision that we're not an applicable plan? Is that option open to the fund? Is there anything preventing the fund from taking that avenue? So it is certainly an option that could occur. However, there's no guarantee of the government's position. At this point, they have not tied the two. And in fact, for Section 111 reporting, let's say that there's never a conditional payment demand. Let's say we never get out of that administrative process. We would still have to continue Section 111 reporting. Whether you have to submit a report or not is completely divorced from whether you have ever received a conditional payment plan, a conditional payment demand. That reporting obligation, it persists and it exists, completely independent of whether the government ever makes a demand. I fully understand your point there, and it's a very reasonable one. The larger question, I think, for us is whether you've still done enough on the Medicare side before you come to court. And to that I would say the administrative process. There are certain things that those administrators can consider, and by statute there are certain things they cannot. There can never be a decision coming out of that administrative process that decides whether we have to submit Section 111 reports or not. They can submit decisions that might be related. The primary plan, the applicable plan definition, we believe that they're very similar and that a ruling would be helpful. But the Sega case tells us that it's not the end of the story. When the Ninth Circuit determined that Sega didn't have to pay- Sorry, which case says that? Sega v. Azar. So in that case, the Ninth Circuit- Sorry, what was the acronym? California Insurance Guarantee Association versus- Thank you. Versus Azar. We are immersed in this field the way you are. I apologize. And the California Guarantee Association is the analog to the Illinois Fund. It operates in the same way that we do, and it steps in to provide a limited form of protection. Right, right. Yes, okay. And so in that case, even though the Ninth Circuit ruled and held that Sega did not have to reimburse conditional payments, the Section 111 issue was an open question. And afterwards, the California Fund wrote to the government, just as Illinois did, and asked for its determination that it would no longer be required to submit those reports to prevent further litigation in the matter. And in that case, the government responded affirmatively. It said, yes, we don't think you have to submit reports. But Illinois Fund, we don't agree with the Ninth Circuit decision. We don't think it applies to you. And they did make an opinion and say that they believed we should continue those reportings. And in those situations, we have an untenable risk. We can't cease reporting. We're a law-abiding entity. We have an opinion from the government that says it expects us to be applying these risks. There is a fine that's authorized by statute, $1,000 per claimant per day, if we cease reporting. And so in those situations, we have an injury in fact. We've established our standing and our ability to come to this court where we don't have another venue. Since you do want to discuss standing, do you read the Susan B. Anthony case to require that you also allege some sort of constitutional interest? And if so, what would be that constitutional interest here? So when you look at it, there are several cases in the area. And we do believe that if you look at it, first off, our primary argument is administrative burden. None of the cases say that you have to have a constitutional interest for that. And with respect to the fine, I do not read the cases saying that. I believe that it leaves the door open to say if you have the threat of a fine, the meta-immune case is the case that we would point the court to. The meta-immune case says you don't have to wait for the liability. If you have a situation where you have a threat, an expectation that there could be harm, you're not required to put yourself in that harm's way. You can come to the court, which is the case that we would rely upon. You know, the fund didn't respond to the citation to United States versus R.I. Insurer's Insolvency Fund from the First Circuit. It appears that the First Circuit has rejected a similar claim on the merits. Would you like to respond now? I would. So the Ninth Circuit case in SIGA versus AZAR, that dealt with the precise question of, are we a primary plan that needs to submit conditional payment reimbursements? The Ninth Circuit held SIGA was not. There was a previous case from years earlier involving the Rhode Island fund in the First Circuit. And in that case, the court did require the fund to reimburse for conditional payment demands. Both of those cases get to the underlying merits of the dispute. We do seem to have a bit of a split there. We think not necessarily because the SIGA case goes into much more detail about the workings of the fund and considers arguments that were not presented and not decided by the First Circuit. So that gets to the meat of the argument. If we get past this question on standing, if we get past this question on jurisdiction, we're going to return to the district court and we're going to be fighting it out. And I'm sure the government's going to cite to the Rhode Island case. We'll cite to this California case from the Ninth Circuit. Ms. Young, in your appeals from the payment demands, is the government objecting to the consideration of the primary plan issue? In the administrative proceeding? Correct. So at this point, the ALJs, there are several cases that are making their way through the administrative process. I personally am not aware of the government issuing a substantive response on the question of primary plan or an ALJ deciding that issue as of this point. But there may be something I'm not aware of. Well, maybe you could consult. But my question is whether the government is opposing consideration of that question in the administrative appeals. I fully expect that they would if they haven't done so yet. That they would object to consideration of that issue? Well, that they would object, they would say we are a primary plan. No, no, no, I understand. I expect a disagreement on the merits. My question is whether the government is telling us that that's a sufficient forum to air this issue out and have it decided. But I'm asking you whether they're telling you in the administrative appeals that that issue is not even relevant. At this point, I have not seen anything where the government takes a position one way or the other. Thank you. I have a rather basic question. When the fund wrote HHS asking for this opinion, it got a letter back from the Director of the Office of Financial Management, which is a subcomponent of the Centers for Medicare and Medicaid. At that point, did the fund think about, well, this is just the Director of the Office of Financial Management. Who's above this director? And then who's above that? So we did send our letter. It was addressed to several different agents at DHHS. The agent that responded was from the Office of Financial Management. And I believe that this is the same agents that had responded with respect to SIGA's letter that came before us. So is your position when you got the letter from the same people who responded in California, this was the end of the line? There was no one above them to, quote, unquote, I'm using the word loosely here, appeal to? That's right, because we didn't have that administrative process. We received a letter. It was from a government agent that appeared to have authority. And there was also final. It didn't invite discussion. There was no sense of, you know, let's wait or we're not taking a position. The letter specifically says we think you're an applicable plan and you have to continue this reporting. You've used your time, but don't worry. I'm going to give you were asked a lot of questions. So don't worry about not having time. You will. Thank you, Judge. Thank you. Hello, Ms. Rossman. Good morning. Where do you want to begin? Okay. Well, may it please the court, counsel. I'd like to clear up a few of the issues that your honors asked the opposing counsel on her time. With regards to the California case that your honors have been discussing, that is not the same procedural posture as the case we are faced with today. At the time that that case was decided, the California fund had raised their claim to the court because they filed suit shortly before the agency had actually enacted regulations that specifically allow plans such as the funds that nature here to go through the administrative appeals process. At the time of the California case and the Rhode Island case from the First Circuit that we discussed, that was not an option. So at the time, the government agreed that they didn't have an applicable appeal route. However, since then, the government has put an applicable appeal route in place. HHS now knows that entities such as this plan, this fund, can in fact use that administrative process in the way that we've discussed that they're using it right now to dispute specific reimbursement demands. So are you conceding? Let me make sure I understand. Are you conceding on the record today that a challenge to reporting requirements is justiciable in the administrative setting and will be decided in that process? Yes, your honor. We do think that a challenge to the reporting requirements can eventually be decided in the administrative appeals process. Currently, the rule for that is not actually yet in effect, which goes to the imminence of the injury, in fact, that the fund was discussing. The reasons why the district court dismissed the case were the fund lacks jurisdiction and standing. And so, I'm sorry, your honor, did you have a question? Well, I mean, if that issue, let's say, if it's possible that that issue is discussed, but it's not decided in an administrative process, what recourse would the fund have? See, here's what I've been foreseeing. I've been foreseeing a possibility, for example, that the result of the administrative process could be a finding, that the fund need not make the specific repayment for some reason, other than the applicable plan issue, followed by a refusal to decide the applicable plan issue as being moot. Do you see my problem? I do, your honor. I would like to note that there are cases where the issue specifically of whether or not an entity is a primary plan is channeled through the administrative process in this exact manner. The Taranski case that the court, that we used in our briefs, specifically in that case, the party was challenging a reimbursement demand on the basis that they were a tortfeasor who was not a primary plan. And that went all the way through and was addressed in that case. So we do believe that that issue can be litigated in the administrative process. And whether or not it were in the case you're mentioning, if there was a letter where they said that that was a moot issue, under Illinois counsel, if the issue still isn't resolved in the process, as long as it's channeled through that process, then eventually you will be able to get judicial review on that issue. I hear you saying two things. Yes, I said why. I hear you saying that it can be handled through the administrative process, and you point, for example, to Taranski. But I also hear you saying the rules aren't yet in place for it to be handled through the administrative process. Because we've got two different issues here. We've got the repayment, the repayment claims. That's clearly a process that's been set up for that now, post the California issue, but it's set up. Then we've got Section 111 reporting. No rules in place. So can you reconcile for us the two different things you've said? Yes, I can. So the reporting requirement, as we discussed, hinges on the fact of whether or not an entity is an applicable or primary plan under the MSP provisions. So naturally, the government has stated in their prospective rule and the preamble, the statement on the public record, that they will not enforce fines retroactively. They will only enforce prospectively. So in the event, in the future, if the government were to try to find an entity such as the fund for failure to report, if the fund were to come back and say, well, we're not an applicable plan, we're not a primary plan, and we have these determinations from the administrative process that say as much, that is something that could be used to refute that claim at that time. So those issues of the Section 111 reporting and the primary or applicable plan are very intertwined. Without a decision on one, the other won't apply. And so the fund itself was the one back in 2009 that self-registered as a reportable entity. And our position is that while they now don't agree that they're an entity anymore that has those claim requirements, they have to go through the administrative process to have the agency make that decision before they can ask the court to weigh in on it. It's just too premature at this point in time. Their question of whether or not these provisions in Section 111 apply is not answered by the letter that they received from the agent of CMS. It's not a final agency decision. And in order for that to be a reviewable action, it would have to be. We do not hold that position that that's a final agency decision at all. It's not a culmination of the agency's decision-making process. It is not legally binding on the fund. The reason why there was a letter that came out for the California case was because there was a legally binding final decision and that was the decision of the Ninth Circuit, which I've explained at the time the fund was able to get to, because that appeals process for plans wasn't in place yet. And so in this case now, where we do have an appeals process that can address the issue of a primary plan, it's on the record in other circuits where you do see that ALJs will address that issue in the appeals process. We just ask that the fund follow the process that's mandated by the Medicare Act and channel the question through that administrative process to get an answer from the agency before the court can give one. So the question here has to do with the ambiguity in your use of the phrase, the question. I thought that was where I thought you and Judge Rovner might have been missing connection a little bit because unless you can tell us that the question about the reporting requirements and being a primary plan that is at least potentially subject to these conditional payments is the same question. Is that your position? Our position is that you can't answer that question without addressing the other one. I recognize they aren't the exact same question. Well, does the answer to one control the other? Yes. We would say that the answer to whether you are required to report is controlled by the answer of whether or not you are a primary entity under the statute. Can you assure us that the question of, that the primary plan question, it can properly be presented in the payment appeals? With no rules in effect yet? Yes, because the primary plan issue, there are rules and statutes in effect about that. So you can litigate the issue of a primary plan now. Sorry, Your Honor. I'm getting this confused, but I want to make sure. Primary plan is about payment obligation, correct? Yes. Okay. And so there is a process, there are regs, and you're telling us that issue can be decided, the government is not opposing consideration of that issue in the administrative appeals, and that that answer will in fact govern the section 111 reporting requirements. Yes. In order to be considered an applicable plan for those requirements, you have to be a primary plan. So those two are not How do you respond? I'm sorry. Go ahead. I just, sorry, but I just I heard a clear yes a few minutes ago to whether those are the same question. And I want to make sure you're not trying to slip a knife blade in between the two of them. They are the same question in essence, yes. Because I'll take that. You will? I will. Okay. Go ahead. I mean, okay. I don't want to sound like a dunce here. Okay. But did you you have admitted, it seems to me, there is no rule yet to allow this to be decided in the administrative process. You said it's a prospective rule, or that's the way I heard it. And that would mean that for now, the plaintiff is correct. Would it not? With regard specifically to the question of the section 111 reporting requirement, your honor is correct that that is prospective. We do not think it means that they're correct that they don't have an avenue for administrative review. If you look to the Illinois counsel case, the court in that case was very clear that even if the administrative process does not have an exact hearing in place for a specific issue, if you can get to the heart of the matter, the issue underlying that case in the administrative process, you're still required to channel. So just because the rule for the section 11 requirement is still prospective does not mean that the plan can't channel the main underlying question to that of whether or not they are an applicable plan. Because if you're a primary plan, you are an applicable plan. Well, how do you respond to Ms. Young's point that the fund, say the fund didn't have any claims for reimbursement that it wanted to challenge, it would still be subject to rule 111 reporting. And so in that scenario, how would it challenge its obligation to report under rule 11 because it can't resort to this other administrative process of filing a reimbursement dispute? Well, so in that context, Congress has decided that you will have to wait to channel that question until it's actually an imminent situation of injury. We disagree with the fund's assertion that they are currently suffering an injury in fact in any way for two different reasons. Did Congress say that or did the court say that if there's no process around, you can actually seek judicial review? So the court in the Bowen case in Michigan Academy said that if the act specifically precludes you from judicial review or you're suffering such a hardship that judicial review would be impracticable and basically relatively impossible, then you would have judicial review implied into the statute as a right because typically speaking, the court won't go to look into the statute and imply a preclusion. The act does not preclude the fund from raising that question. The act specifically says you can raise that question once you go through the process. Postponing under the act is not the same thing as total But we all know the government can say, we're working on regs, they're coming out next year. And ten years later, there's still no regs. So how long in this second scenario does the fund have to wait to get some review of its obligation to report under Section 11 when they're saying this is burdensome for us? So unfortunately, I don't have an answer to the question of how long they would wait on the very narrow issue of the Section 111 reporting requirement. However, we do take the position that you can get an answer on the primary plan issue now and that answer is determinative of the other issue which will be decided in the future. And as such, we also dispute the fact that they have an injury in fact at the time for two different reasons. We do not agree that the burden is other than bare assertions that one exists. However, counsel, you challenged that on the pleadings, however, correct? Yes. So one can imagine, for example, a factual, more factual development if you want to win on the argument that their allegations just weren't quite specific enough or that they need an affidavit, right? You can imagine that. What is your second argument against an injury in fact? Well, our second argument is that without the threat of a fine, that is an imminent threat, that can't be an injury in fact at this point. The courts have been very clear. Let me ask you if I could about your constitutional argument here on standing actually sweeps very, very broadly. So imagine a contract case, two parties in a long-term contract. One tells the other, you have an obligation to send us these reports and undertake this expense of gathering this information and sending us quarterly reports. And the other says, no, I don't. Can a district court entertain a declaratory judgment action to resolve that question between the two of them brought by the party that allegedly has the reporting requirements? Hypothetically, in that case, I could see where your honor is going with that. However, I would have to disagree with the fact that you can look at that divorced from the Medicare Act context because a typical contracts case... Could you answer my hypothetical and then tell me why it's irrelevant? Sure. So hypothetically, if you have two parties where one of them is arguing that they have to report something under a contract and the other one is claiming that they don't have to. And it's a dispute as to what the contract itself says. And they're saying that there's an injury based on that. Now, the declaratory judgment is relevant because in that situation, a court would already have jurisdiction and the power to decide how to interpret that contract, which would go to the issue of injury. Based on? Based on if the terms of the contract, for example, would allow judicial review or if there's no arbitration clause. It's very tenuous hypothetical, so it's hard for me to really get to... Okay, there's no arbitration clause. It's just a contract. And there's diversity of citizenship. Would that kind of an obligation, a dispute over such an obligation be sufficient to support an Article 3 case or controversy that could support the declaratory judgment? I think it would still depend on the facts of that situation regarding how onerous the burden would be. But again, I know I'm out of time. That becomes kind of the factual issue and we're getting back to the problem of the conversation we had a moment ago. If there are no claims for payment to challenge, there's no process in place, right? We would agree that for the Section 111 reporting requirement, that process is still pending. But the enforcement of that is also still pending. So there's nothing to appeal in that context right now. There's no injury being caused by that reporting requirement. Because again, we maintain that the fund has not articulated a current injury from just the fact that requirement exists. You have to connect that to a government action that would cause that injury. The government hasn't taken an action at this point. That letter that the fund specifically appealed on is not a final agency action. They could have gone to other parts of the agency. They could have addressed this in the process through the primary plan issue. But instead, it's kind of akin to if they didn't agree with the district court, sending a letter to the clerk of the court here asking them to just take a look at the California opinion and make a determination that the district court was incorrect. That's not the way that you get to answer that question. We agree the question should be answered, but you have to go through the process the way that Congress has set it up because the channeling requirement is... Can I ask one other question with my colleague's indulgence? And that has to do with how realistic the prospect of such a state guarantee fund not facing any claims for reimbursement might be. If I understand the way this works, if the fund has stepped into the shoes, for example, of a particular liability or health insurer that's gone into the rehabilitation process, to avoid any potential claims, there would have to be no individual cases in which health care was provided to someone under the Medicare Act. Is that right? To our knowledge, correct. I don't have a ton of facts at hand about... And in any population of insured individuals, that would seem to be a vanishingly small probability to me at least. Is that how you see it? Yes. The limited knowledge I have on the subject, the amount of claims that are levied against the fund are small, but there are claims. They do have reimbursement claims coming to them from the government. They are not large amounts in question, and there's not a whole large amount of volume. But I can say that with enough certainty that claims do exist. Okay. Thank you. Seeing as we're tremendously over time, if there's no other questions that your honors have for me, I would like to rest on the briefs and ask that you uphold the district court's opinion in dismissing the funds complaint. Thank you. Thank you, Ms. Rossman. Ms. Young. I'm going to give you five minutes, Ms. Young, because I think we need it, to be perfectly honest. Thank you very much, Judge. And I'll start with sort of an admission we had today from the government, which is that today, as we sit here, there is no administrative process that the fund could go to to challenge Section 111 reporting. We sent our letter. They say it wasn't good enough. But what we're missing is, well, what could we have done? What could we have done other than come to this court? And we really had no option. The administrative process for the fines, it's been in the works for eight years, and it's going to be prospective only. So that's not going to help us today with our current obligation and the current duties that we're performing each quarter. And as has been mentioned, the fund is relatively in the business of determining whether the person asserting a claim against the fund is also asserting a claim against Medicare. And then we need to submit detailed, accurate, and comprehensive information about each of those claimants. And we need to do it every quarter. So when counsel says and the government says, well, just wait. Wait for the process. It's been eight years. Who knows how much longer it will take? That's not a satisfactory answer. The United States Supreme Court told us in Michigan Academy, we don't have to wait. And if you have a situation where you are adversely impacted by a government regulation and you don't have an opportunity to go to administrative process, there is jurisdiction. And that's exactly where we find ourselves here today. I'd also like to briefly address this idea that we can do sort of a backdoor expansion of the administrative process that exists for conditional payments. The statute tells us, the Medicare Secondary Payer Act tells us what that administrative process can consider. And it says that the administrative process can consider conditional payment demands when you have a specific demand. It does not give that tribunal any authority to address Section 111 reporting. And I think what we hear from the government is, well, if you just kind of squint closely at it and maybe we'll get a determination from them and maybe we'll say it applies to Section 111. Well, that should be good enough. What they're telling us is that it's the same question. Well, I heard a little bit... And that's the position you're taking in the administrative fields, right? So you all seem to agree on that. I hear a little bit of hedging from the government. I heard the government say that, well, if you're not a primary... If you are a primary plan, well, then you have to do reporting. Well, what if we're not a primary plan? Does that mean we don't have to do reporting? I heard words like, in essence, or a little bit of hedging there. I'm not confident that we have some sort of binding admission from the government that three years from now, if we emerge from the administrative process and prevail in court, we would be able to say it's the same thing. Well, let me... I think I did hear such a binding admission. And if the government doesn't think it made it, it should file a post-argument letter to that effect. But even if that's true, what we have is a situation where we're waiting on a process. Let's say that the government does agree to that. But if we are not a primary plan, we don't have to do Section 111 reporting. We're holding up this action in a situation where we have no remedy to wait on resolution of a different question. There is no law that I'm aware of and no authority that I'm aware of that says that we have the ability to do that here. That says if there's some separate question that may be instructive, our rights are foreclosed at present. The government has not come forward with any case that says if you have a related proceeding in one area, that would stall, suspend, prevent resolution of an issue that is properly before the court and for which the court does have jurisdiction because there is not an administrative remedy. And I think that's what we're lacking here. With that, I will invite any further comments from the judges here, and thank you for your time if there are none. All right. But I think it would be prudent in 14 days for the government to send us a letter as Judge Hamilton requested. And we'll give you, because it's holiday time, 14 days to respond to that letter. One way or another, we need this question answered. Well, okay. Thank you very much to both Ms. Rossman and Ms. Young. Case is going to be taken under advisement, but not for eight years. And the court is going to take a 10-minute recess.